**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **FAIR HOUSING OPPORTUNITIES** | : | |
| **OF NORTHWEST OHIO, INC. DBA** | | |
| **FAIR HOUSING CENTER** | : | |
| **326 N. Erie Street** | | **Judge:** |
| **Toledo, OH 43604** | : | **Case No.:** |
| | | |
| **and** | : | |
| | | |
| **MATHER EDWARDS** | : | |
| **1520 BROOKE PARK DRIVE** | | |
| **TOLEDO, OH 43612** | : | |
| | | |
| **Plaintiffs,** | : | |
| | | |
| **v.** | : | |
| | | |
| **INEST PREMIER PROPERTIES LLC** | : | |
| **C/O ANDERSON REGISTERED** | | |
| **AGENTS, INC** | : | |
| **470 West Broad Street, Suite 701** | | |
| **Columbus, OH 43215** | : | |
| | | |
| **and** | : | |
| | | |
| **1540 BROOKE PARK LLC** | : | |
| **C/O ANDERSON REGISTERED** | | |
| **AGENTS, INC** | : | |
| **470 West Broad Street, Suite 701** | | |
| **Columbus, OH 43215** | : | |
| | | |
| **and** | : | |
| | | |
| **TAM LEE** | : | |
| **3225 McLeod Drive** | | **COMPLAINT** |
| **Las Vegas, NV 89121** | : | **JURY TRIAL DEMANDED** |
| | | |
| **Defendants.** | : | |

## COMPLAINT

Now come Plaintiffs, Fair Housing Opportunities of Northwest Ohio, Inc. DBA The Fair Housing Center ("Plaintiff" or "The Fair Housing Center" or "TFHC"), and Mather Edwards ("Plaintiff" or "Ms. Edwards"), (collectively referred to as "Plaintiffs"), by and through counsel, and hereby state for their Complaint the following:

## INTRODUCTION

1. Plaintiffs bring this action for declaratory, injunctive, and monetary relief against 1540 Brooke Park LLC, iNest Premier Properties LLC, and Tam Lee ("Defendant Lee") (collectively referred to as "Defendants"), for discrimination on the basis of disability in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, the federal Fair Housing Amendments Act of 1988 ("FHAA"), and the fair housing laws of the state of Ohio, Ohio Rev. Code § 4112.01, *et seq.*, (collectively the "Fair Housing Laws").

2. This action originates from Defendants noncompliance with the Fair Housing Laws pursuant to the denial of a reasonable accommodation request by Ms. Edwards, who is disabled, to allow caretakers on the property to help her with daily tasks and the denial of a reasonable modification request by Ms. Edwards for the installation of a portable ramp.

3. Defendants retaliated against Ms. Edwards for requesting a reasonable accommodation and modification. Such retaliation was in the form of an unlawful eviction proceeding.

4. Defendants' noncompliance with the Fair Housing Laws is the result of Defendants' negligent training and supervision of its property managers and assistant property managers.

5. The Ohio Civil Rights Commission determined it was probable that Defendants engaged in an unlawful discriminatory practice on the basis of disability in violation of Chapter 4112 of the Ohio Revised Code.

6. Defendants failure to abide by its fair housing policy and/or procedure resulted in a violation of the Fair Housing Laws, as Ms. Edwards was denied the equal opportunity to use and enjoy her dwelling**.**

7. The Fair Housing Laws require a housing provider to grant reasonable accommodation and modification requests for persons with disabilities to ensure they have an equal opportunity to use and enjoy a dwelling.

8. Defendants' actions violate the Fair Housing Laws, and their denial of reasonable accommodation and modification requests have harsh consequences for persons with disabilities who are routinely denied the full use and enjoyment of their homes.

9. Defendants' actions and practices, as described herein, violate the Federal Fair Housing Act, 42 U.S.C. 3601, et seq.; and the Ohio Fair Housing Law found at Ohio Rev. Code § 4112.02(H), *et seq.*

10. Defendants' negligent training and supervision of its employees, agents, and contractors directly led to their discriminatory actions, policies, and housing practices.

## PARTIES

11. Plaintiff, Fair Housing Opportunities of Northwest Ohio, Inc. DBA The Fair Housing Center, is a private, non-profit corporation, organized under the laws of the State of Ohio. The Fair Housing Center's mission is to be a nonprofit civil rights agency that promotes housing choice, the creation of inclusive communities of opportunity, and the protection

3

and expansion of fair housing rights to support strong communities free from housing discrimination.

12. Plaintiff, The Fair Housing Center, advocates on behalf of clients when housing providers violate the Fair Housing Laws; provides training and education to housing providers to avoid discrimination; and conducts investigations, including testing, to ensure civil rights laws are being followed in housing accommodations, services, and transactions.

13. Plaintiff, Mather Edwards, is a resident of Toledo, Ohio and resided at 1520 Brooke Park Drive, Apt 3, Toledo, OH 43612 (the "Subject Property). Ms. Edwards is protected from discrimination on the basis of disability. Ms. Edwards utilizes the assistance of a wheelchair, thus her mobility impairment is readily apparent.

14. Defendant, 1540 Brooke Park LLC, is an Ohio limited liability company. Upon information and belief, Defendant owns, operates, and manages the Subject Property.

15. Defendant iNest Premier Properties LLC, is an Ohio limited liability company. Upon information and belief, Defendant operates, maintains, and manages the Subject Property.

16. Upon information and belief, Defendant, Tam Lee is the Property Manager for the Subject Property. Defendant Lee has actual and apparent authority to act on behalf of the corporate Defendants.

17. In acting or omitting to act as alleged herein, each Defendant was acting through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees, officers, and/or agents.

18. In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority

4

pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by Defendant as principal.

19. A housing provider is vicariously liable for discriminatory housing practices by their agents or employees, "regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law."[1]

## JURISDICTION AND VENUE

20. Jurisdiction is appropriate in that this civil action brought under the federal Fair Housing Act ("FHA") and Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601, *et seq*.

21. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the complaint raises federal questions under FHA and FHAA. Additionally, this Court has supplemental jurisdiction over related state law claims, including Ohio Rev. Code § 4112, *et seq*. (the "Ohio Fair Housing Act"), under 28 U.S.C. § 1367.

22. Defendants are subject to the jurisdiction of this Court as they are "Persons" under the FHA and Ohio Fair Housing Act, and the acts described herein occurred primarily in Toledo, Ohio.

23. Additionally, Defendants are subject to the jurisdiction of the Court as they conduct business across Ohio, including but not limited to: owning property, managing property, leasing property, and performing contractual obligations in Ohio.

24. The venue is proper in that Defendants' discriminatory acts occurred primarily in Toledo, Lucas County, Ohio.

25. Wherefore, Plaintiffs respectfully request that this Court take jurisdiction of this Complaint and award such relief as is appropriate under the federal and state fair housing laws.

---

[1] Code of Federal Regulations Part 100 – Discriminatory Conduct Under the Fair Housing Act, https://www.govinfo.gov/content/pkg/CFR-2017-title24-vol1/xml/CFR-2017-title24-vol1-part100.xml.

Plaintiffs also respectfully request that the Court award further relief as is appropriate under Ohio tort law.

## FACTS

26. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 25 as if fully restated herein.

27. Plaintiff, Ms. Edwards entered into a one-year lease agreement at the Subject Property with Defendants on April 18, 2022, for a term from April 22, 2022 through April 30, 2023.

28. The lease was modified and resigned on May 30, 2022, for a lease term from May 3, 2022 to May 31, 2023.

29. Ms. Edwards subsequently moved into the Subject Property.

30. Ms. Edwards informed Defendants when she moved in that she was disabled, and she required assistance during the day to perform certain tasks.

31. Defendant Lee began to suspect that more individuals than those identified on the lease were living with Ms. Edwards.

32. Ms. Edwards explained to Defendant Lee that the individuals were just aiding her with daily tasks and did not live there. Ms. Edwards made clear that the assistance was needed because of her disability.

33. Subsequently, Ms. Edwards was charged a penalty, pursuant to the lease, for allowing two individuals to stay over for more than 3 consecutive nights.

34. Ms. Edwards subsequently requested another reasonable accommodation to allow people to stay over to assist her with daily tasks. The request was denied.

35. In May 2022, Ms. Edwards made a reasonable modification request to Defendants. The reasonable modification request was to have a portable ramp installed. The ramp was necessary because of Ms. Edwards' disability which impacts her mobility.

36. The Program Manager arranged for a contractor to visit the Subject Property to take measurements. The purpose of the measurements was to have a portable ramp installed.

37. Upon information and belief, a maintenance employee informed Defendant Lee that someone had been to the Subject Property to measure for a ramp.

38. Ms. Edwards reiterated to Defendant Lee that she needed a ramp because of her mobility impairment and that someone would be calling Defendants about the ramp installation.

39. Defendants repeatedly assessed maintenance and occupancy fees to Ms. Edwards during her tenancy and after the requests for reasonable accommodation and modification were made.

40. On or about June 27, 2022, Ms. Edwards was served with a three-day notice to leave the premises for non-payment of maintenance fees, tenant charges and fees, and occupancy charges.

41. The program manager of the nursing home diversion program (the "Program Manager") of which Ms. Edwards is a participant attempted to contact Defendants via telephone several times and left several voicemails.

42. The Program Manager eventually spoke to an assistant manager at the Subject Property. The assistant manager informed the Program Manager that she was not going to discuss the ramp because Ms. Edwards was being evicted for non-payment of maintenance and guest fees (i.e., occupancy charges).

43. The Program Manager informed the assistant manager that Ms. Edwards was a participant in a nursing home diversion program, and that Ms. Edwards' family assisted her with daily tasks as part of the plan to help Ms. Edwards remain out of a nursing facility.

44. The assistant manager told the Program Manager she did not care what program Ms. Edwards was involved with and that she would have to pay the fees for having people stay over.

45. Md. Edwards then contacted The Fair Housing Center to find out what rights she had since she was getting nowhere with Defendants' staff.

46. On or about July 28, 2022, The Fair Housing Center sent a letter on behalf of Ms. Edwards requesting a reasonable modification to have the ramp installed. In addition, The Fair Housing Center asked for permission to allow Ms. Edward's visitors to come and assist her with daily tasks.

47. On or about July 28, 2022, Defendant Lee received a call about the installation of the portable ramp for Ms. Edwards. Defendant Lee told the caller that they wanted to wait until after the eviction hearing of Ms. Edwards before discussing the ramp.

48. On or about July 29, 2022, the eviction action was dismissed after Ms. Edwards paid her outstanding fees.

49. Defendant Lee did not subsequently attempt to contact the caller about the installation of the portable ramp for Ms. Edwards.

50. On or around October 14, 2022, Ms. Edwards along with The Fair Housing Center filed an administrative complaint with the Ohio Civil Rights Commission (the "Commission").

51. The Commission completed an independent and thorough investigation of Defendants' actions and housing policies, practices, and services related to this Complaint.

52. On August 24, 2023, the Commission issued an investigative report, attached as Exhibit 1, finding it probable that Defendants engaged in unlawful discriminatory practices in violation of the Ohio Fair Housing Act, found at Ohio Rev. Code § 4112.02.

53. The Commission found that Defendants do not have a formal policy or guidelines for processing disability accommodation requests.

54. The Commission further found that Defendants failed to explore modifications to their current policy regarding charging tenants for guests who stay for more than three consecutive days in order to accommodate Ms. Edwards.

55. The Commission further found that Defendants failed to communicate with Ms. Edwards further about the request for a ramp after the dismissal of the eviction. There was nothing to suggest that there would have been any hardship in granting this modification request.

56. The Commission further found that The Fair Housing Center suffered damages which include inconvenience, economic loss through diversion of its resources, and frustration of its mission to promote equal housing opportunities. Further, the Fair Housing Center was forced to divert its scarce resources to address Defendants' discriminatory conduct.

**INJURY TO PLAINTIFFS**

57. Ms. Edwards requested a reasonable accommodation to allow people to come to the Subject Property and assist her with various daily tasks.

58. Ms. Edwards is bound to a wheelchair and requires assistance with various daily tasks.

59. Defendants denied the reasonable accommodation request and charged her for two guests staying in the apartment for more than three consecutive days. As a result, Ms. Edwards was denied the ability to use and enjoy her dwelling.

60. Defendants brought an eviction against Ms. Edwards in retaliation for engaging in the protected activity of requesting a reasonable accommodation.

61. Because of the discriminatory maintenance and occupancy fees, Ms. Edwards had to defend against the unlawful eviction.

62. Ms. Edwards made a reasonable modification request to install a portable ramp at her apartment.

63. Defendants denied the reasonable modification request, thus denying her the ability to use and enjoy her dwelling.

64. As a direct, proximate, and foreseeable result of Defendants' discriminatory conduct as described herein, Ms. Edwards suffered substantial harm and injury, both economic and non-economic. Ms. Edwards suffered from anxiety, emotional distress, and mental anguish because of Defendants' discriminatory treatment.

65. Defendants retaliated against Ms. Edwards for making a reasonable accommodation and reasonable modification request in the form of an unlawful eviction proceeding.

66. Defendants' unlawful actions, conduct, policies, and practices have frustrated and impaired The Fair Housing Center's mission and purpose, forced them to drain their limited and scarce resources, and interfered with the ability to operate.

67. Defendants' conduct frustrated The Fair Housing Center's mission by interfering with their mission-related activities, impairing their ability to achieve their goals of ensuring equal and fair access to housing opportunities, and harming their community.

68. Defendants' discriminatory conduct has forced and required The Fair Housing Center to engage in numerous activities to identify and counteract the Defendant's unlawful conduct, policies, and practices, in order to protect residents from unlawful housing discrimination

on the basis of disability. The Fair Housing Center missed speaking engagements, grant opportunities, training sessions, and had to delay its Analysis of Impediments to Fair Housing Study in Lucas County, Ohio.

69. The Fair Housing Center will continue to divert its scare resources and have its mission frustrated until Defendants' discriminatory conduct ceases and the harm caused by Defendants on residents is remedied and resolved.

70. Defendants' failure to properly train and supervise its staff directly resulted in discriminatory treatment and injury to Plaintiffs.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF THE FAIR HOUSING ACT OF 1968, as amended

## 42 U.S.C. § 3601, et seq.

71. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 70 as if fully restated herein.

72. Defendants' conduct as described in this Complaint constitutes a refusal to grant a reasonable accommodation request in rules, policies, practices, or services when such an accommodation may be necessary to afford a person with disability an opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(3)(B).

73. Defendants' conduct as described in this Complaint constitutes a refusal to grant a reasonable modification request when such a modification may be necessary to afford a person with disability an opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(3)(A).

74. Defendants' conduct as described in this Complaint constitutes discrimination against the Plaintiff in the terms, conditions, or privileges of rental of a dwelling, or in the provision

of services or facilities in connection with such dwelling, because of the disability of a person residing in or intending to reside in a dwelling, including through the refusal to make reasonable accommodations and modifications, in violation of 42 U.S.C. §§ 3604(f)(3)(A) and 3604(f)(3)(B).

75. Defendants' conduct as described herein constitutes retaliation, a violation of 42 U.S.C. § 3617, as Defendants served Ms. Edwards with a three-day notice to leave as a direct and proximate result of her requests for a reasonable accommodation and modification.

76. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiffs have suffered damages and are aggrieved persons, as defined in 42 U.S.C. § 3602(i).

77. There are no valid or legitimate reasons for denying Plaintiffs' reasonable accommodation and modification request.

78. There was a causal connection between the eviction notice and the request for a reasonable accommodation and modification.

79. Defendants frustrated the mission of The Fair Housing Center and forced them to divert their scarce and limited resources to remedy the discriminatory conduct of Defendants as referenced in this Complaint.

80. Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000.00, plus costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT II: VIOLATION OF THE OHIO CIVIL RIGHTS ACT

## OHIO REV. CODE § 4112.02(h), *et seq*.

81. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 80 as if fully restated herein.

82. Defendants' conduct as described in this Complaint constitutes a refusal to make reasonable accommodations in rules, policies, practices, or services when necessary to afford a person with disability equal opportunity to use and enjoy and dwelling, in violation of Ohio Rev. Code § 4112.02(H)(19).

83. Defendants' conduct as described in this Complaint constitutes a refusal to make reasonable modification when necessary to afford a person with disability equal opportunity to use and enjoy a dwelling, in violation of Ohio Rev. Code § 4112.02(H)(18)(a).

84. Defendant's conduct and policies as described in this Complaint constitute unlawful discrimination in the terms or conditions of transferring, assigning, renting, leasing, or subleasing a unit; or in the furnishing of facilities, services, or privileges, in connection with the occupancy or use of the premises on the basis of disability in violation of Ohio Rev. Code §§ 4112.02(H)(4) and 4112.02(H)(16).

85. Defendants' conduct as described in this Complaint constitutes retaliation as Defendants intimidated, threatened, and interfered with Ms. Edwards enjoyment of her dwelling by serving her an eviction notice because she exercised her rights under Ohio Rev. Code §§ 4112.02(H)(18)(a) and 4112.02(H)(19), a violation of Ohio Rev. Code § 4112.02(H)(12).

86. As a direct, proximate, and foreseeable result of Defendants' discriminatory conduct, Plaintiffs have suffered damages and are aggrieved persons, as defined in Ohio Rev. Code § 4112.051.

87. There are no valid or legitimate reasons for denying Ms. Edwards reasonable accommodation and reasonable modification requests.

88. There was a causal connection between the eviction notice and the request for a reasonable accommodation and modification.

89. Defendants frustrated the mission of The Fair Housing Center and forced them to divert their scarce and limited resources to remedy the discriminatory conduct of Defendants as referenced in this Complaint.

90. Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000.00, plus costs and reasonable attorney fees, in an amount to be determined at trial.

### COUNT III – NEGLIENT TRAINING AND SUPERVISION

91. Plaintiffs restate and reallege each and every allegation in Paragraph 1 through 90 as if fully restated herein.

92. Defendants owed a duty of care to properly train and supervise its employees, including its property managers and assistant property managers at the Subject Property, on fair housing laws and anti-discrimination practices.

93. Defendants breached their duty of care by negligently providing inadequate training and failing to supervise its property managers and assistant managers at the Subject Property on fair housing laws and non-discriminatory practices.

94. As a direct and proximate result of Defendants' negligent training and supervision, Ms. Edwards suffered harm in the form of unfair and discriminatory treatment after being denied reasonable accommodation and reasonable modification requests.

95. As a result of Defendants' negligent training and supervision, Ms. Edwards was denied fair and equal housing opportunities with Defendant.

96. As a result of Defendant's negligent training and supervision, tenants with disabilities encounter barriers and obstacles to requesting and receiving approvals for reasonable accommodations and modifications to afford them an equal opportunity to use and enjoy their dwelling.

97. Plaintiff, The Fair Housing Center, was injured by Defendants' actions as described herein and diverted its scarce resources and had its mission frustrated by Defendants' discriminatory conduct as described herein.

98. Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000.00, together with costs and reasonable attorney fees, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, due to Defendants' discriminatory conduct and policies as described herein, Plaintiffs respectfully request that this Court grant judgment in their favor, and against Defendant, as follows:

A. Declaring that Defendants' actions violate the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq*., and Ohio Rev. Code § 4112, *et seq.;*

B. Permanently enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

C. Awarding all compensatory damages, economic and non-economic, to Plaintiffs in an amount to be determined at trial that would fully compensate Plaintiffs for the injuries caused by the conduct of Defendant as alleged herein;

D. Awarding all punitive damages to Plaintiffs in an amount to be determined by a jury that would punish Defendant for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

E. Awarding reasonable attorneys' fees and cost as permitted by the Fair Housing Laws; and

F. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on any issue triable of right pursuant to Civ.R. 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ *C. Jacob Davis*
_____
C. Jacob Davis, Esq. (#0101745)
Nalls Davis | Attorneys at Law
33 White Allen Avenue
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 200-7285
Email: Jacob.Davis@nallslaw.com
*Attorney for Plaintiffs*

**Dated:** January 3, 2024

## CERTIFICATE OF SERVICE

I hereby certify that service of the Summons and Complaint is being made upon Defendant as required by the Federal Rules of Civil Procedure, via certified mail return receipt requested, or another form of proper service at the addresses listed in the caption of this complaint.

/s/ *C. Jacob Davis*
_____
C. Jacob Davis (#0101745)

**EXHIBIT 1 – OCRC Findings**



# OHIO CIVIL RIGHTS COMMISSION

Governor Mike DeWine
Commissioners:  Valerie A. Lemmie, Chair | Lori Barreras | William Patmon, III | Madhu Singh | Charlie Winburn
Executive Director Angela Phelps-White

August 24, 2023                                    Date Mailed: August 24, 2023

The Fair Housing Center                        Tam Lee, Property Manager
c/o George Thomas,                             1540 Brooke Park LLC
Vice President and General Counsel              3225 McLeod Drive, Suite 100
326 N. Erie Street                             Las Vegas, NV  89121
Toledo, OH  43604
georgethomas@toledofhc.org

## LETTER OF DETERMINATION
The Fair Housing Center v. Tam Lee, Property Manager; 1540 Brooke Park LLC;
iNest Premier Properties LLC; Clyde Phillips, Maintenance
TOLH2(41784)10142022 AMENDED/05-23-7947-8

**FINDINGS OF FACT:**

On October 14, 2022, Charging Party, The Fair Housing Center, filed an affidavit with the Ohio Civil Rights Commission alleging that Respondent(s), Tam Lee, Property Manager; 1540 Brooke Park LLC; iNest Premier Properties LLC; Clyde Phillips, Maintenance, (hereinafter referred to as the "Respondent"), discriminated against them by impeding their mission of eliminating discriminatory practices and expanding equal opportunities related to fair housing practices. Charging Party alleges that Respondent subjected their client, Mather R. Edwards, to discriminatory terms and conditions of rental (denial of reasonable accommodation, denial of reasonable modification, and eviction) based upon disability. All jurisdictional requirements for filing a charge have been met.

Charging Party is a private, nonprofit community resource seeking to eliminate housing discrimination, promote housing choice, and create inclusive communities of opportunity. To achieve its mission, Charging Party works with partner organizations to provide services to families and housing professionals, including advocacy, education and outreach, complaint research and investigation, and enforcement and litigation.

Charging Party alleges that they have assisted Ms. Edwards in the investigation and filing of a discrimination charge with the Ohio Civil Rights Commission. Ms. Edwards is disabled and requires the use of a wheelchair. Charging Party states that in May 2022, Ms. Edwards made a reasonable modification request to allow her to have a portable ramp installed and made a reasonable accommodation request to allow people to assist with her personal care, and both have been denied by Respondent. Charging Party states that on June 27, 2022, Ms. Edwards received a three-day eviction notice from the property manager. Charging Party believes Respondent has subjected Ms. Edwards to discriminatory terms and conditions of rental (denial of accommodation and modification requests and eviction) due to her disability. Charging Party states they have expended time and resources assisting Ms. Edwards, and the mission of The Fair Housing Center has been frustrated by Respondent's actions.

---

The Fair Housing Center v. Tam Lee, Property Manager; 1540 Brooke Park LLC; iNest Premier Properties LLC; Clyde Phillips, Maintenance
TOLH2(41784)10142022 AMENDED/05-23-7947-8
Page 2

Respondent denies Charging Party's allegations. Respondent states that they assisted Ms. Edwards with being able to rent the subject unit by reducing their monthly rental price to match Lucas Metropolitan Housing's approved price. Respondent states that there was no problem with Ms. Edwards having visitors to help her with various daily tasks, however Ms. Edwards had two visitors that stayed overnight for more than three consecutive days in a month in violation of the lease agreement, which resulted in fees charged.

Respondent Tam Lee states that the first time she was made aware of Ms. Edwards' need for a ramp was when a maintenance employee informed her that someone had been out to the subject property to measure for one. Respondent states that when asked, Ms. Edwards stated that someone would be in contact with Respondent regarding the ramp. Respondent states that she didn't hear from anyone about the ramp until the day before Ms. Edwards' eviction hearing for non-payment of fees. Respondent states that she requested to wait until after the eviction hearing to address the ramp further and did not hear from anyone again after the eviction was dismissed.

Information shows Ms. Edwards signed an initial lease agreement with Respondent on April 18, 2022, for a lease term of April 22, 2022, to April 30, 2023. Ms. Edwards subsequently signed a corrected lease agreement on May 30, 2022, reflecting the lease term of May 3, 2022, to May 31, 2023. Information shows Ms. Edwards moved into the subject property on or about May 10, 2022. Information shows Respondent does not have a formal policy or guidelines for processing disability accommodation requests.

Information shows that around the time Ms. Edwards moved into the subject property, she informed Respondent that she was disabled and had someone help her out during the day with certain tasks.

Information shows that shortly after Ms. Edwards moved into the subject property, Respondent assessed maintenance fees to Ms. Edwards for requiring a plumbing contractor to unclog the toilet after Respondent warned Ms. Edwards to not flush wipes down the toilet, as well as for a broken screen and replacement cabinet knobs. Information also shows that Respondent charged Ms. Edwards pursuant to the lease for two guests that stayed overnight for more than three consecutive days.

Information shows that sometime between when Ms. Edwards moved into the subject property and June 8, 2022, Respondent was alerted by a maintenance employee that someone had been to the subject property to measure for a ramp for Ms. Edwards. Information shows that when Respondent asked Ms. Edwards about this, Ms. Edwards informed Respondent of her need for a ramp, and that someone would be calling Respondent about the ramp.

Witness information shows that the manager of a nursing home diversion program to which Ms. Edwards was a participant attempted to contact Respondent via telephone and left several voicemails without receiving a return call. Information shows the program manager was finally able to speak to Respondent's assistant manager, who informed the program manager that she was not going to discuss the ramp, and that Ms. Edwards was being evicted for non-payment of maintenance and guest fees. Witness information shows that the program manager informed the assistant manager that Ms. Edwards was a participant in a nursing home diversion program, and that Ms. Edwards' family came to assist her as needed as part of a back up plan to help Ms. Edwards remain in her home in lieu of a nursing facility.

The Fair Housing Center v. Tam Lee, Property Manager; 1540 Brooke Park LLC; iNest Premier
Properties LLC; Clyde Phillips, Maintenance
TOLH2(41784)10142022 AMENDED/05-23-7947-8
Page 3

The program manager states that Respondent's assistant manager indicated that she did not care what
program Ms. Edwards was in and that Ms. Edwards would have to pay the fees. Respondent Tam Lee
states that she was not made aware of the conversation between the assistant apartment manager and the
program manager.

Information shows that on June 27, 2022, Respondent served Ms. Edwards a three-day notice asking her
to leave the premises for non-payment of maintenance fees, tenant charges and fees, and occupancy
charges. Respondent subsequently filed an eviction complaint in the Toledo Municipal Court on July 7,
2022. Information shows that an eviction hearing was scheduled for July 29, 2022.

Charging Party states that they sent a letter on Ms. Edwards' behalf, dated June 29, 2022, to Respondent
requesting a reasonable accommodation for permission to have a ramp installed, as well as permission for
Ms. Edwards' visitors to have easy access to help her with various daily tasks. Respondent denies
receiving this letter.

Respondent Tam Lee states that on or about July 28, 2022, she received a phone call from someone about
the ramp for Ms. Edwards. Respondent Lee states that she did not write down the name or phone number
of the person calling but informed the person that she wanted to wait until after the eviction hearing
scheduled for the next day to discuss the ramp. Information shows Ms. Edwards received rental assistance
from a third-party agency, and upon payment to Respondent of the outstanding fees, the eviction action
was dismissed on July 29, 2022. Information shows Respondent did not subsequently attempt to contact
either the person who called the previous day about the ramp or Ms. Edwards with regard to the ramp.
Respondent states that she did not receive another call from anyone about the ramp and assumed Ms.
Edwards did not need the ramp anymore. Information shows Ms. Edwards moved out of the subject
property at the end of the lease in April 2023.

The Commission's investigation shows that Respondent failed to explore modification of their current
policy of charging tenants for guests who are present for more than three consecutive days in any given
month after learning of Ms. Edwards' need for help with daily tasks due to her disability. Information
shows Respondent failed to continue the interactive process with regard to Ms. Edwards' request for a
ramp after the dismissal of the eviction action. There is no information to show a hardship would have
resulted to Respondent in granting Ms. Edwards' accommodation requests.

As a result of Respondent's discriminatory conduct, Charging Party has suffered damages, including
inconvenience, economic loss through diversion of its resources, and frustration of its mission to promote
equal housing opportunities. Charging Party was forced to divert some of its resources away from other
fair housing activities to address Respondent's discriminatory conduct.

**DECISION:**
The Ohio Civil Rights Commission determines it is **PROBABLE** that Respondent has engaged in an
unlawful discriminatory practice in violation of Ohio Revised Code Chapter 4112. Therefore, the
Commission hereby orders that this matter be scheduled for **CONCILIATION**.

The Fair Housing Center v. Tam Lee, Property Manager; 1540 Brooke Park LLC; iNest Premier
Properties LLC; Clyde Phillips, Maintenance
TOLH2(41784)10142022 AMENDED/05-23-7947-8
Page 4

In accordance with Ohio Revised Code § 4112.05(A) and Ohio Administrative Code § 4112-3-03(C), the
Commission invites you to participate in conciliation by informal methods of conference, conciliation and
persuasion. Enclosed is a draft Conciliation Agreement and Consent Order for your consideration.
Sue Sekel has been assigned as Conciliator and can be reached by telephone at 419-245-2993 or by email
at sue.sekel@civ.ohio.gov. **Please contact the Conciliator to discuss the conciliation process**. If the
Commission's attempts at conciliation are unsuccessful, a formal complaint will be issued, and the case
will be scheduled for a public hearing.

**NOTICE OF RIGHT TO REQUEST RECONSIDERATION:**
Pursuant to Ohio Administrative Code § 4112-3-04, you have the right to request reconsideration of this
determination of the Commission. The application must be in writing and state specifically the grounds
upon which it is based. If you wish to appear before the Commissioners to present oral arguments
supporting your request, you must specifically make a request to appear in writing.

This request must be sent to the Compliance Department, Ohio Civil Rights Commission, 30 East Broad
Street, 5th Floor, Columbus, Ohio 43215. You must submit the request for reconsideration, along with all
additional evidence or supporting documentation, within **TEN (10) days** of the date of mailing of this
notice. Any application for reconsideration or additional materials received by the Compliance
Department in the Commission's Columbus Central Office after the ten-day period has expired will be
deemed untimely filed. Extensions of this ten-day filing period are not permitted.

*\*\*Please note, conciliation efforts do not toll the applicable time period for submitting a Request for
Reconsideration. See, Ohio Administrative Code § 4112-3-04.*


FOR THE COMMISSION,

*William E. Baskin, Jr.*
William E. Baskin, Jr.
Toledo Regional Supervisor
William.baskin@civ.ohio.gov
WEB/mse

Enclosure: Draft Conciliation Agreement and Consent Order


**Additional Respondents:**
iNest Premier Properties LLC
155 Front Street, Suite C
Secaucus, NJ 07094

1540 Brooke Park LLC
3225 McLeod Drive, Suite 100
Las Vegas, NV 89121

**Additional Respondents:**
Clyde Phillips, Maintenance Crew
iNest Premier Properties LLC
155 Front Street, Suite C
Secaucus, NJ 07094

The Fair Housing Center v. Tam Lee, Property Manager; 1540 Brooke Park LLC; iNest Premier Properties LLC; Clyde Phillips, Maintenance
TOLH2(41784)10142022 AMENDED/05-23-7947-8
Page 5

cc:  1540 Brooke Park LLC
     c/o Anderson Registered Agents, Inc.,
     Statutory Agent
     470 West Broad Street, Suite 701
     Columbus, OH  43215

     **Representative for Charging Party:**
     Deborah Riley-Jackson
     Housing Specialist
     The Fair Housing Center
     326 N. Erie Street
     Toledo, OH  43604
     djackson@toledofhc.org

iNest Premier Properties LLC
c/o Anderson Registered Agents, Inc.,
Statutory Agent
470 West Broad Street, Suite 701
Columbus, OH  43215

**Representative for Respondent:**
Matthew L. Weisenburger, Esq.
Cline, Cook & Weisenburger Co., L.P.A.
11201 Sandusky Street, Suite 202
Perrysburg, OH  43551
mweisenburger@ccw-law.com



# THE OHIO CIVIL RIGHTS COMMISSION

**CENTRAL OFFICE**
Rhodes State Office Building
30 East Broad Street, 5th floor
Columbus, Ohio  43215
Telephone: (614) 466-2785
Toll Free: (888) 278-7101
TTY: (614) 752-2391
Fax: (614) 644-8776

**TOLEDO REGIONAL OFFICE**
One Government Center
640 Jackson St., Suite 936
Toledo, Ohio 43604
Telephone: (419) 245-2900
Toll Free: (888) 278-7101
TTY: (614) 752-2391
Fax: (419) 245-2668

## CONCILIATION AGREEMENT AND CONSENT ORDER

Charge Number:     TOLH2(41784)10142022 AMENDED/05-23-7947-8
Charging Party:     The Fair Housing Center
Respondent:          Tam Lee, Property Manager; 1540 Brooke Park LLC; iNest Premier Properties
                              LLC; Clyde Phillips, Maintenance

### General Provisions

1.    This Conciliation Agreement and Consent Order is made between the Ohio Civil Rights Commission (hereinafter "Commission"); The Fair Housing Center (hereinafter "Charging Party"); Tam Lee, Property Manager; 1540 Brooke Park LLC; iNest Premier Properties LLC; Clyde Phillips, Maintenance (hereinafter "Respondent") and Respondent's heirs, representatives, officers, agents, employees, successors, or assignees.

2.    This Conciliation Agreement and Consent Order is designed to ensure voluntary compliance with the provisions of the Ohio Laws Against Discrimination, as set forth in Ohio Revised Code Chapter 4112.

3.    Respondent agrees that there shall be no discrimination of any kind as prohibited by Ohio Revised Code Chapter 4112 and that there shall be no retaliation against any person because he/she has opposed a practice deemed illegal under that chapter or because he/she has filed a charge, testified, assisted, or participated in an investigation, proceeding, or hearing.

4.    Charging Party hereby waives, releases, and agrees not to sue Respondent for any claims arising before the Ohio Civil Rights Commission that were the subject of the above-referenced charge.

## Remedial Action

5.     As evidence of a good faith effort to resolve the above-referenced charge, it is agreed:

    a.  Respondent will not discriminate with respect to housing. Prohibited actions include, but are not limited to:

        i.  discriminating against any person in the availability, terms, conditions, or privileges of occupancy because of disability, race, color, sex, religion, national origin, military status, ancestry, or familial status.

    b.  Respondent shall formulate a disability accommodation policy and shall review and approve accommodation requests pursuant to Ohio Revised Code Section 4112.

    c.  Respondent's owners, managers, directors, and all other employees shall attend no less than two (2) hours of suitable Ohio Civil Rights Commission approved training with regard to disability discrimination and reasonable accommodation requests within the meaning of Ohio Revised Code Chapter 4112 at Respondent's expense. This shall take place within 60 days of executing this agreement.

    d.  Respondent shall establish annual training sessions to sensitize supervisory and non-supervisory employees on disability discrimination and reasonable accommodation requests whenever needed, but no less than once each year. The training shall focus on Ohio Revised Code Chapter 4112.

    e.  Respondent shall pay Charging Party actual damages incurred.

6.     Supporting documentation and proof of compliance with this Conciliation Agreement and Consent Order shall be submitted to Desmon Martin, Director of Compliance and Enforcement, Ohio Civil Rights Commission, Compliance Department, 30 E. Broad Street, 5th Floor, Columbus, OH 43215-3414 within 90 days of the signature date of the agreement.

## Enforcement

7.     In the event of a breach of this agreement, Respondent agrees to pay the Commission, as liquidated damages, the base hourly rate for Commission employee(s) involved in handling the breach, times the hours spent on documented enforcement efforts by said employee(s). Such liquidated damages are intended to represent estimated actual damages and are not intended as a penalty.

8.     In accordance with the terms of Ohio Revised Code § 4112.06 and Ohio Administrative Code § 4112-3-03(D), this Conciliation Agreement and Consent Order constitutes a final order of the Commission. Respondents agree to be legally bound by this Conciliation Agreement and Consent Order and to waive a public hearing in this matter. See Ohio Adm. Code § 4112-3-10(B)(3).

9.     This Conciliation Agreement and Consent Order does not constitute an admission by Respondent of any violation of Ohio Revised Code Chapter 4112.

10.     The Commission may investigate whether Respondent has complied (or is complying) with the terms of this Conciliation Agreement and Consent Order. To that end, the Commission may require written reports and/or conduct inspections, examine witnesses, and review and copy pertinent records to determine compliance with the terms contained herein.

11.     Respondent agrees that upon its failure to fully comply with the provisions of this Conciliation Agreement and Consent Order the Commission may initiate further action including, but not limited to, the filing of a complaint in the Court of Common Pleas to seek enforcement of the terms and provisions of this Conciliation Agreement and Consent Order and reimbursement for any legal fees and costs incurred in filing such enforcement action.

*SIGNATURES TO FOLLOW ON THE NEXT PAGE*

**CHARGING PARTY (The Fair Housing Center or Representative)**

_____

Signature                          Printed Name                          Date

_____

Title

**RESPONDENT (Tam Lee, Property Manager; 1540 Brooke Park LLC; iNest Premier Properties LLC; Clyde Phillips, Maintenance or Representative)**

_____

Signature                          Printed Name                          Date

_____

Title

**OHIO CIVIL RIGHTS COMMISSION**

_____

Signature                          Printed Name                          Date

_____

Title